# Case No. 14,541.

## UNITED STATES v. BATCHELDER.

[9 Int. Rev. Rec. 98.]

District Court, N. D. New York. Nov. 20, 1868.

PLEADING AT LAW—AMENDMENT—WHEN ALLOWED —CARELESSNESS OF COUNSEL.

1. The power to allow amendments of defective pleadings rests in the discretion of the court, to be exercised in view of the interests of the public and suitors, and all the circumstances of the cause.

2. Carelessness of counsel in preparation of case and pleadings severely animadverted upon.

HALL, District Judge. This is a motion for leave to amend the plaintiff's declaration, in a suit brought to recover the value of certain property imported from Canada, and alleged to have been entered below its actual cost, upon a false invoice. Upon an examination of the papers in the case, it appears that the declaration was filed on the 2d day of August, 1867, and that the plea of the defendant was filed upon the 23d day of the same month. This declaration contains a single count, which, as it now appears, was drawn by the district attorney's third assistant from a precedent in the district attorney's office. This precedent had, probably, been prepared by or for some former incumbent of that office, in a case of forfeiture in rem, arising out the general customs act of 1799 [1 Stat. 627]. The case was tried under the declaration at the last August term [case unreported], the district attorney throughout the trial, and during the argument upon the motion in arrest of judgment [Case No. 14,540], made after a verdict for the United States, founding his right to the judgment upon the ground that the United States were entitled to recover under the act of March 3, 1863 [12 Stat. 742]; and it was not until some days after the argument of the motion in arrest that the district attorney took the ground that the declaration was framed upon the act of 1799, and that the declaration and verdict entitled the United States to judgment for the forfeiture imposed by the last mentioned statute.

It was quite obvious, on the argument of the motion in arrest, that the declaration was insufficient to sustain an action under the act of 1863. An informal motion for leave to amend the declaration, in case it should be held insufficient, was then made by the district attorney; and, after the argument, the counsel for the defendant presented, in opposition to the motion, an affidavit of the defendant, sworn before a master in chancery in Vermont, in which the defendant denied any intention to defraud the revenue, and alleged that he supposed he had a right to enter the property as he did, at its actual value, though less than its actual cost. The declaration was decided to be insufficient to authorize a judgment therein, under either of the acts above referred to, and the court declined to grant leave to amend the declaration upon such informal and irregular application. Notice of an application for leave to amend was then given by the district attorney; and the question of amendment is now regularly before the court upon the affidavits and papers presented by the counsel for the respective parties, and the papers upon the files of the court. The declaration which the district attorney now seeks to file as an amended declaration contains three distinct

counts; one being a count under the act of 1799, and two being counts founded on the act of 1863.

The affidavits presented by the district attorney upon this motion, furnish but little, if any, excuse for the negligence or want of skill which led to the defects of the original declaration, or for the still grosser negligence which led to the trial of the case, more than a year after the declaration was filed, upon the statute of 1863, and a declaration which was obviously insufficient under such statute. It is shown that the declaration was prepared by the third assistant district attorney, who deposes that he does not particularly remember the circumstances under which it was prepared, but supposes, that in drawing it, he followed the form which was in use in the office of the district attorney, and which, he supposed, had been approved by the court; that on examining the original declaration he finds interlineations in the hand-writing of James H. Murray, a clerk in the district attorney's office; that on the day the declaration was filed, he, the deponent, was absent from Buffalo, and that from these circumstances he presumes that the declaration filed was merely a rough draft, and that it was not presented to the district attorney for his signature, but was signed by the deponent, and filed by said Murray in the absence of the deponent. Some other circumstances are stated, but they are not deemed important, and there is nothing in the papers to show that the declaration, or a copy of it, was ever examined by the district attorney, before he commenced the trial of the cause.

On the part of the defendant an affidavit is produced showing that the sums which he has paid, or become liable to pay as costs, fees, and expenses of counsel, &c., in carrying on the defence, in this case, amount to $791.19, and that he has also spent eighteen days' time, and $125 additional in money, in making his defence. All this is, of course, in addition to the very large expenses, reaching probably nearly $500, which have been incurred by the United States; and if the amendment be allowed very large additional expenses to the United States and to the defendant will necessarily be incurred. In the present confused and uncertain state of the law relating to importations from Canada, it is, perhaps, doubtful whether any judgment for the United States which might be entered in this court, would not be reversed by the circuit court, in case the learned judge who presides in that court shall adhere to the opinions delivered by him in the case of U. S. v. Smith [Case No. 16,319], and the case of U. S. v. Nolton [Id. 15,897], decided by him in 1866 or 1867. Although my own opinion is that the facts proved upon the former trial were sufficient to maintain the action if the declaration had been properly drawn, yet, in view of the cases just referred to, it is very doubtful whether the presiding judge of the circuit court would concur in that opinion.

Besides, a different state of facts may be shown upon any future trial, for the defendant was not sworn when the case was tried, and it is by no means certain, that in the final result, the verdict of the jury may not be against the United States upon the questions of fact, even if the judgment of the circuit court would be in favor of the defendant upon the questions of law involved in the controversy. It is, therefore, exceedingly difficult to determine what disposition should be made of the present motion, or, if granted, what terms should be imposed as a condition of the amendment.

It is quite probable, if not entirely certain that the further prosecution of the suit is sought in the interest of the informer and revenue officers, more than of the United States, and I see no reason why these informers and revenue officers should not be required to take some of the risks which are imposed upon private parties in ordinary civil causes, and should not have the same terms imposed as the conditions of an amendment in this case (if an amendment be granted), as would be imposed in an ordinary civil suit, between private parties. The right of the court to grant an amendment is not doubted, although in penal actions, and in proceedings to enforce a forfeiture, amendments are not allowed with as much liberality as in ordinary civil actions. All such amendments rest entirely in the discretion of the court, and in the exercise of such discretion the interests of the public, the general convenience and interests of suitors, and even the convenience of the court are properly taken into consideration, as well as the character and degree of the negligence which has produced the necessity for amendment. It can hardly be doubted that in such a case as the present, in which more than $9,000 was claimed as a penalty or forfeiture, an ordinarily careful pleader would have made himself acquainted with the proofs and facts of the case, and the laws applicable thereto, and would have originally drawn a declaration containing three counts, at least, and presenting the case substantially as it is now desired to present it by an amended declaration. It is equally certain that a careful lawyer would have made himself acquainted with the facts, proofs, pleadings and law of his case before he ventured to move its trial, and the application for leave to amend in this case, does not commend itself strongly to the favorable consideration of the court; but as the proof on the trial was very strong, if not entirely conclusive against the defendant, the motion for leave to amend will not be wholly denied upon the ground that its necessity could have been prevented by the exercise of only ordinary care and skill.

The other considerations which should influence the court in the exercise of its discretion, as well as the terms to be imposed if an amendment be allowed, present questions

in respect to which there can be no precedents to control that discretion, nor any precise rule of action adopted. It is of great importance to private suitors, to the government, and to all parties prosecuted for a violation of the laws of the United States, that the accuracy and legal form of pleadings should be preserved, and that a substantial compliance with the established rules of pleading and proceeding should be required and rigorously enforced. Every succeeding relaxation of these rules has a tendency to produce grosser carelessness, and as an inevitable consequence, to multiply the irregularities and defects which not unfrequently produce unnecessary delays and grievous expense, if not gross injustice. Such negligence also tends to bring numerous and embarrassing questions before the court, and what is worse, to the commencement, without proper examination, of unjust and oppressive prosecutions, burdensome, if not ruinous to the parties prosecuted and enormously expensive to the government. That the labors of the judges and the judicial expenses of the government in this judicial district (both of which are already appalling), are greatly and unnecessarily increased, are not, perhaps, the most serious evils which want of care in the preparation of pleadings and the management of causes unnecessarily produces, for the same cause has made it necessary that the decision of important questions, involving large amounts of property or important personal rights, be greatly delayed, or else made without that examination and reflection which their proper disposition requires. The pleadings and other papers in many important cases in the courts of the United States in this district are now so carelessly drawn, and causes are so imperfectly prepared for trial, both by the district attorney and his assistants, and by private counsel, that it cannot be doubted that the expenses of the district are thereby greatly increased, and the evil is increasing with frightful rapidity. Under such circumstances great care should be taken to prevent, rather than encourage the growing disposition of the practitioners of the court to forego the necessary labor of the proper preparation of their cases; and amendments should not be granted in ordinary cases, except on such terms as shall secure a party who is without fault from loss, occasioned solely by the gross negligence and fault of his adversary. When suits are prosecuted to enforce a forfeiture, mainly for the benefit of an informer and a seizing officer, and when the defendants, even if successful, must ordinarily litigate at their own expense (because the United States pays no costs, and the proper remedy against the informer and seizing officer cannot ordinarily be enforced), there would seem to be less reason for liberality in granting amendments and more reason for imposing such terms as would fully secure the opposite party from any loss occasioned by the negligence and fault of the party desiring to amend. Nor have the trials in prosecutions promoted by the officers of the customs in this judicial district, upon the allegation that merchandise imported has been undervalued upon its entry at the custom house, always commended these officers to the favor of the court. In a large proportion of such cases it has appeared to be quite certain, that if the revenue officers had properly discharged their duties, and required a strict compliance with the forms of law, the party prosecuted would not have attempted to evade the payment of the proper duties, for the reason that such attempt could not be made and the intended fraud consummated without wilful and corrupt perjury, under circumstances which would render the proof of guilt quite certain, and the production of such proof by no means difficult. Indeed, it is believed that the carelessness, ignorance, or inattention of these officers has not unfrequently induced the irregularity and fraud complained of, or given rise to most of the difficulties in the way of a speedy and easy, as well as proper disposition of these cases.

The expenses which the defendant has incurred in his defence, are stated in his affidavit to be more than $900, but as no witnesses were sworn for the defendant at the trial, I cannot but think that expenses have been paid or incurred with more liberality than is generally exercised by private suitors, or was formerly exercised by the government; and it is supposed that $400 will not be a grossly unfair allowance for the reasonable expenses of the defence.

But there are considerations which would seem to authorize an amendment in this case, under certain circumstances, without the payment of all these expenses. The defendant has little reason to complain that an expensive trial has been had upon a clearly defective declaration, alleging a forfeiture under the act of 1799. That it was not a sufficient declaration under the act of 1863 was certain and obvious; and if the defendant or his counsel intended to raise the question of its sufficiency under the act of 1799, and desired to avoid the accumulation of unnecessary costs, he should have demurred to the declaration, instead of pleading issuably, and requiring a trial by jury, in which the costs and expenses of the United States would hardly fail to exceed those of the defendant. The defendant was in fault in this respect, and the count, under the act of 1799, may be amended on payment of $50 costs. The addition of two new counts under the act of 1863, is an amendment of a different character. Such an amendment will introduce an entirely new cause of action in point of law (though probably founded upon the same transaction in point of fact), and so far as the introduction of these counts is concerned, the terms of amendment should not be the same. The terms on which such an amendment ought to be allowed, should not

be very different from those which would be imposed if the count under the act of 1799 were to be abandoned; and if the defendant elect to relinquish his right to apply to the secretary of the treasury for a remission of the alleged forfeiture, this addition of new counts under the act of 1863, will be allowed upon the payment of a further sum of $300. But the defendant's counsel has intimated an intention to apply for a remission of the alleged forfeiture, and it would not be just to require the informer and seizing officer, or other party interested, to pay this large sum, as a condition of amendment, if such an application is afterwards to be made. For this reason the amendment by adding new counts will be allowed on payment of $50, in addition to the $50 before mentioned, unless the defendant shall expressly waive and relinquish his right to apply for a remission of such alleged forfeiture, within a time to be specified in the order for such amendment.